IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

NICK RYAN HENSLEY,                                                                            PLAINTIFF
ADC #149259

v.                          5:19-cv-00367-DPM-JJV

FLORIA WASHINGTON, Classification,
Varner Unit, ADC; *et al.*                                                                    DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge D.P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3.  The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

**I.    INTRODUCTION**

Nick Ryan Hensley ("Plaintiff") is a prisoner in the Delta Regional Unit of the Arkansas Division of Correction ("ADC").  He has filed a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, alleging that, while he was in the Varner Super Max Unit, Defendants Classification Officer Floria Washington, Major Brandon Carroll, and Warden James Gibson violated his constitutional rights by failing to protect him from harm and subjecting him to inhumane conditions of confinement. (Doc. No. 2.)

Defendants have filed a Motion for Summary Judgment arguing the claims against them should be dismissed without prejudice because Plaintiff failed to properly exhaust his administrative remedies before filing this lawsuit.  (Doc. Nos. 28, 29, 30.)  Plaintiff has not filed a Response.  After carefully reviewing the pleadings and for the following reasons, I recommend Defendants' Motion for Summary Judgment be GRANTED, Plaintiff's claims against Defendants be DISMISSED without prejudice, and this case be closed.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III. ANALYSIS

The Prison Litigation Reform Act ("PLRA") provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers

3

before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89–91 (2006).

The PLRA requires inmates to properly exhaust their administrative remedies as to each claim in the complaint and complete the exhaustion process prior to filing an action in federal court. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.*

The ADC policy in effect at the time of the alleged constitutional violations was Administrative Directive 19-20, which establishes as three-step grievance procedure. (Doc. Nos. 28-1, 28-2.) First, the inmate must attempt informal resolution of a problem by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident. (Doc. No. 28-1 at 6.) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id.*) Importantly, the Directive states, "only one problem/issue should be stated in the grievance, not multiple problems/issues," and "[o]nly one issue will be addressed." (*Id.* at 5.) Also, inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and that an "inmate who fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (*Id.* at 5.) The problem solver must respond to the informal resolution within three

4

working days.  (*Id.* at 7-8.)   Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance on the same Unit Level Grievance Form within three working days.  (*Id.* at 8-9.)   The warden or his designee must provide a written response to the formal grievance within twenty working days.  (*Id.* at 11.)   Third, an inmate who is dissatisfied with the warden's response or does not timely receive a response, must appeal within five working days to the appropriate ADC Assistant Director.  (*Id.* at 11-12.)   The ADC Assistant Director must provide a written response within thirty working days.  (*Id.* at 13.)   "A decision or rejection of an appeal at this level is the end of the grievance process."   (*Id.*)   Finally, Administrative Directive 19-20 includes the following warnings:

> Inmates are hereby advised that they must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit or Claims Commission claim.   If this is not done, the lawsuit or claim may be summarily dismissed.

(*Id.* at 19.)

In her sworn Declaration, the ADC Inmate Grievance Supervisor says VSM-19-2599, VSM-19-2656, and VSM-19-2802 are the only relevant grievances Plaintiff filed prior to commencing this lawsuit.   (Doc. No. 28-1.)   Plaintiff has not offered any contrary evidence.

In VSM-19-2599, Plaintiff alleged he was going to be released from segregation into general population where he might be harmed by members of Aryan gangs.   (Doc. No. 28-3.) And, in VSM-19-2656 Plaintiff said he had not received a timely response to VSM-19-2599. (Doc. No. 28-6.)   The Warden denied both grievances, and Plaintiff appealed.   (Doc. Nos. 28-4, 28-7.)   The ADC Deputy Director issued his final rulings in December 2019, which was *after* Plaintiff filed his lawsuit on November 26, 2019.   (Doc. Nos. 2, 28-5, 28-8.)

The law is clear.   "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court."   *Johnson,* 340 F.3d at 627 (emphasis

5

in the original).   Dismissal is mandatory if "exhaustion was not completed at the time of filing." *Id.; see also Booth v. Churner,* 532 U.S. 731, 733 (2001) (the PLRA requires prisoners to complete exhaustion "before suing over prison conditions"); *Harris v. Kemna*, No. 05-2746, 2005 WL 3159569 (8th Cir. Nov. 29. 2005) (unpublished opinion) (affirming dismissal when exhaustion was not complete at the time of filing).   And, as previously mentioned, the ADC's grievance policy cautions prisoners they "must exhaust their administrative remedies as to all defendants at all levels of the grievance procedure before filing a Section 1983 lawsuit."   (Doc. 28-2 at 19.) Because Plaintiff completed the grievance process on VSM-19-2599 and VSM-2656 *after* he filed this lawsuit, they cannot be considered.

In VSM-19-2802, Plaintiff requested several inmates be added to his enemy alert list. (Doc. No. 28-9.)   The Warden denied that grievance.   (Doc. 28-10.)   But, Plaintiff did not appeal that ruling to the ADC Deputy Director, as he was clearly required to do by the ADC's grievance policy.   (Doc. No. 28-2 at 11-14.)   To satisfy the PLRA, a prisoner must properly comply with all steps of the prison's grievance procedure.   *Woodford*, 548 U.S. at 90 (exhaustion "means using all steps that the agency holds out and doing so properly so that the agency addresses the issues on the merits"); *Burns v. Eaton*, 752 F.3d 1136, 1141–42 (8th Cir. 2014) (a prisoner must pursue "the prison grievance process to its final stage").   Plaintiff did not do so as to VSM-19-2802.

For these reasons, I conclude Plaintiff did not properly exhaust his administrative remedies before commencing this lawsuit.   And, he has not asserted or presented any evidence suggesting he was prevented from doing so.   *See* 42 U.S.C. § 1997e(a) (prisoners must exhaust all "available" administrative remedies); *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016) (administrative remedies are "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation").   Accordingly, I

recommend the Motion for Summary Judgment be granted, and Plaintiff's claims against Defendants Washington, Carroll, and Gibson be dismissed without prejudice due to a lack of exhaustion. *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

I realize Plaintiff may perceive my exhaustion findings as an unfairly technical "gotcha" mechanism to keep him out of court. To the contrary, the exhaustion requirement plays a critical role in the remedy process. The Eighth Circuit has explained this important role as follows:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Johnson,* 340 F.3d at 626-27; *see also Woodford*, 548 U.S. at 88 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures").

## IV. CONCLUSION

IT IS, THEREFORE, RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (Doc. No. 28) be GRANTED, Plaintiff's claims against Defendants Washington, Carroll, and Gibson be DISMISSED without prejudice, and this case be CLOSED

2. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

7

DATED this 23rd day of March 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE